**Susan D. Marmaduke, OSB No. 841458**
**susan.marmaduke@harrang.com**
**John Rake, OSB No. 105808**
**john.rake@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
1001 SW Fifth Avenue, 16th Floor
Portland, OR 97204
Telephone:    503.242.0000
Facsimile:    503.241.1458

Of Attorneys for Plaintiff EasyPower, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **EASYPOWER, LLC,** an Oregon limited liability company, | Case No. 3:13-cv-1462 |
| Plaintiff, | **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND TRADE SECRETS MISAPPROPRIATION** |
| vs. | |
| **OPERATION TECHNOLOGY, INC., dba ETAP,** a California corporation, | **REQUEST FOR JURY TRIAL** |
| Defendant. | |

## PARTIES

1.      Plaintiff EasyPower, LLC ("Plaintiff" or "EasyPower"), is an Oregon limited

liability company with its principal place of business in Gladstone, Oregon.  EasyPower is

engaged in the business of developing software programs for designing, analyzing, and

monitoring electrical power systems.  EasyPower licenses such software programs to industrial

and commercial facilities (including petrochemical, pulp and paper, steel and aluminum,

manufacturing, and health care facilities), electricity producers and distributors, government agencies, and electricity consultants and engineering firms.

2.        Defendant Operation Technology, Inc., dba ETAP ("Defendant" or "ETAP"), is a California corporation with headquarters in Irvine, California.  ETAP is an engineering firm that also is engaged in the business of developing software programs for designing, analyzing, and monitoring electrical power systems.  EasyPower and ETAP are competitors in that business.

JURISDICTION AND VENUE

3.        This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, and for trade secret misappropriation, under ORS 646.461 *et seq.*

4.        This Court has original subject matter jurisdiction over the copyright infringement claim under 28 U.S.C. § 1131 (federal question jurisdiction) and under 28 U.S.C. § 1338(a) (any act of Congress relating to copyrights, patents, and trademarks).  This Court also has subject matter jurisdiction under 28 USC § 1332(a)(1) because EasyPower is an Oregon corporation, ETAP is a California corporation, and the amount in controversy exceeds $75,000.

5.        This Court has supplemental subject matter jurisdiction over the Oregon trade secrets claim under 28 U.S.C. § 1367, because the trade secrets claim derives from the same case or controversy as the copyright claim.

6.        This Court has personal jurisdiction over ETAP because ETAP committed the intentional acts of infringing plaintiff's EasyPower® Software copyright and misappropriating plaintiff's trade secrets in the EasyPower® Software with knowledge that EasyPower is an Oregon company and with knowledge that its wrongful acts would cause injury within Oregon.

Page 2 –    **COMPLAINT**

This Court has personal jurisdiction over ETAP for the further reason that it carries on business in Oregon, including without limitation marketing its products in Oregon, attending trade shows in Oregon, and having customers in Oregon.  ETAP has substantial and not isolated contacts with Oregon.

7.    Venue is proper in this district under 28 U.S.C. § 1400.

## COMMON ALLEGATIONS

8.    EasyPower and its predecessors, through long and extensive research and development, and the expenditure of a considerable amount of time and effort and large sums of money, have developed a software program useful for designing, analyzing, and monitoring electrical power systems ("EasyPower® Software" or the "Software").

9.    The Software is designed to be a software tool that makes it easier for end users to complete complicated electrical design tasks, perform short circuit calculations, coordinate protective devices, and perform arc flash calculations.

10.    The Software contains a substantial number of commercially valuable trade secrets and confidential, proprietary, scientific, technical, and business information concerning electrical systems, electrical equipment, safety calculations, and other computations.  EasyPower has kept this information secret, with restrictions on its further use and disclosure by all those to whom said information has become known, including EasyPower's licensees.

11.    EasyPower licenses the Software to customers via limited, non-transferable, and non-exclusive license agreements ("EasyPower License Agreement"), which include one year of maintenance consisting of all program updates (including new version releases), device library updates, technical support, and discounts on training.  After the first year, the Software maintenance is renewable, with annual pricing based on the package purchased.

12.     When EasyPower enters into an EasyPower License Agreement with a licensee, EasyPower provides an installation disk, a serial number and authorization code, and a hardware key to the licensee.  The hardware key is the main security device and limits the access to and use of the Software in accordance with the particular license agreement.  For example, for a single-use license, a licensee may install the program on multiple hardware devices throughout the facility, but the licensee must plug in the hardware key to a hardware port (*e.g.* a computer or printer port) to actually use the Software on that particular hardware.

13.     The EasyPower License Agreement contains an express agreement between EasyPower and its licensees that the Software is proprietary to EasyPower, and that the Software and "all related data" constitute a valuable asset and trade secret of EasyPower.  The EasyPower License Agreement further provides that the Software is provided for a licensee's exclusive use and will at all times be held in confidence by the licensee.

14.     The EasyPower License Agreement places several additional restrictions on licensees.  Licensees may not, among other things, do any of the following:

- Duplicate or disclose any information provided regarding the Software;

- Publish, disclose, or divulge any portions of the Software to any person, except officers and employees of the licensee as necessary; or

- Disassemble, de-compile, or alter the executable code or the assembly code of the Software.

15.     The EasyPower License Agreement further provides that all user documentation, computer programs, hardware key, identifying symbols and other supporting materials and data associated with the Software are non-transferable.  Upon termination of the EasyPower License

Page 4 –    **COMPLAINT**

Agreement, the licensee must destroy the program (and all copies) and return the hardware key to EasyPower.

16.    EasyPower has not licensed the Software to ETAP.  EasyPower does not license the Software to competitors, and EasyPower has specifically declined ETAP's requests to gain access to the Software.  Across the industry in which ETAP and EasyPower compete, it is a standard practice to prohibit licensees from sharing proprietary software with a third party, particularly a competitor, without the licensor's permission.

17.    Notwithstanding EasyPower's efforts to guard the Software from ETAP, ETAP currently possesses and uses at least two copies of the Software that are not licensed to ETAP.

18.    ETAP advertises its newest version of competing electrical power system design software, ETAP 12, as having a data conversion feature ("DataX") that automatically converts data files created by EasyPower into ETAP 12.  Because of that feature, ETAP represents to customers and prospective customers that DataX will reduce the time, effort, and expense associated with manually converting a customer's EasyPower files (stored in EasyPower's proprietary file format) to ETAP 12.  A primary purpose for advertising that capability is to induce EasyPower's customers to switch from the Software to ETAP 12.

19.    ETAP would be able to ensure that DataX is capable of accurately converting EasyPower data files only by using and testing DataX against the Software, which ETAP only could have obtained by wrongful means, *i.e.*, by using an unlicensed, infringing, or misappropriated copy of the Software.

20.    EasyPower has been damaged, and will be further damaged, by ETAP's infringement of EasyPower's exclusive rights in the Software and misappropriation of EasyPower's trade secrets in the Software, particularly for use in developing DataX.

Page 5 –    **COMPLAINT**

21.     ETAP's offering of DataX to EasyPower's licensees in order to obtain the licensees' business going forward presents an imminent threat to EasyPower's business, particularly revenue streams from maintenance and upgrade contracts.

22.     EasyPower has been damaged, and will be further damaged, by ETAP's possession and use of the Software.  By obtaining access to the Software and operating the Software, ETAP can better understand and analyze the Software's unique and proprietary features, including but not limited to EasyPower's intuitive user interfaces and fast processing speeds.  On information and belief, ETAP can then modify its competing software, ETAP 12, to mimic these features.

FIRST CLAIM FOR RELIEF

**Copyright Infringement**

23.     EasyPower incorporates by reference the allegations in all the preceding paragraphs as if fully set forth herein.

24.     EasyPower owns the copyright to and has filed a registration application  for the Software under United States copyright law.   EasyPower's application for registration is Case No. 1-930376751 in the Copyright Office.

25.     ETAP has created copies or derivative works of the Software without approval or authorization of EasyPower.

26.     ETAP's actions infringe EasyPower's exclusive rights in the Software under 17 U.S.C. § 106.

27.     ETAP obtained financial benefit from the infringement and had the right and ability to control the infringing conduct, and/or intentionally induced, encouraged, caused or materially contributed to the infringement.

28.     ETAP's actions were and are intentional, willful, wanton, and in disregard of EasyPower's rights.

29.     Under 17 U.S.C. § 504(b), EasyPower is entitled to recover from ETAP the amount of its actual damages incurred as a result of ETAP's infringement and ETAP's profits attributable to the infringement, in an amount not yet fully ascertained and to be proven at trial, but totaling at least $75,000.

30.     EasyPower is entitled to relief provided by 17 U.S.C. §§ 502-503 including but not limited to injunctive relief and an order for the impounding and destruction of all of ETAP's infringing copies and/or derivative works.  EasyPower has no remedy at law for ETAP's wrongful conduct because, among other things, EasyPower's copyrights are unique and valuable assets whose market value is difficult to assess, ETAP's infringement harms EasyPower such that EasyPower could not be made whole solely by a money award, and ETAP's wrongful conduct, and the resulting damage to EasyPower, is ongoing.

31.     EasyPower is also entitled to recover its attorney fees and costs of suit.  17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF

### Misappropriation of Trade Secrets

32.     EasyPower incorporates by reference the allegations in all the preceding paragraphs as if fully set forth herein.

33.     The Software, including but not limited to the source code, object code and all related data, constitute trade secrets owned by EasyPower under ORS 646.461(4).  EasyPower derives independent economic value from this information and from the fact that this information

is not generally known or known outside of EasyPower and designated licensees. EasyPower has taken reasonable measures to maintain the secrecy and confidentiality of this information.

34.    ETAP acquired EasyPower's trade secrets by improper means under ORS 646.461.

35.    ETAP has used EasyPower's trade secrets without EasyPower's express or implied consent to create DataX, when ETAP knew or had reason to know that the trade secrets were obtained from a party who owed a duty to maintain its secrecy or limit its use.

36.    EasyPower has been damaged and is under immediate threat of being further damaged by ETAP's misappropriation of its trade secrets in an amount to be established by proof at trial.

37.    ETAP's use of EasyPower's trade secrets to solicit EasyPower's customers is to EasyPower's detriment, and ETAP's use of EasyPower's trade secrets has not abated and will continue unless and until enjoined. EasyPower is entitled to injunctive relief under ORS 646.463(3) to protect its trade secrets.

38.    EasyPower is entitled to monetary relief under ORS 646.465 in an amount not yet ascertained and to be proven at trial, but totaling at least $75,000, including EasyPower's actual losses and the amount of ETAP's unjust enrichment.

39.    ETAP's conduct in misappropriating EasyPower's trade secrets was willful or malicious under ORS 646.465, entitling EasyPower to punitive damages.

40.    EasyPower is entitled to its reasonable attorney fees under ORS 646.467(3).

## PRAYER FOR RELIEF

**WHEREFORE**, EasyPower prays for judgment ordering the following relief:

1.      That ETAP, its directors, principals, officers, agents, representative, employees, attorneys, successors and assigns, and all others in active concert or participation with ETAP, be temporarily and permanently enjoined and restrained from:

        (a)      inducing EasyPower's licensees to breach their Software licensing agreements by providing the Software to ETAP;

        (b)      copying, modifying, distributing, creating derivatives of, or making any other infringing use of the Software it currently possesses, including creating or testing the ability of DataX to automatically convert data files from EasyPower's proprietary file format to ETAP's own format;

        (c)      advertising ETAP's ability—through DataX—to convert EasyPower's current and former customers' data files from EasyPower's proprietary file format to ETAP's format;

        (d)      using DataX to convert EasyPower's current and former customers' data files from EasyPower's proprietary file format to ETAP's format, or otherwise profiting from ETAP's wrongful acquisition of the Software; and

        (e)      making any further use or disclosure of EasyPower's trade secrets and confidential information embodied in the Software.

2.      That ETAP, its directors, principals, officers, agents, representative, employees, attorneys, successors and assigns, and all others in active concert or participation with ETAP, be ordered to deliver up for destruction all copies and derivative

works infringing on EasyPower's copyright in the Software, and all materials

embodying EasyPower's trade secrets and confidential information, including, but

not limited to ETAP's DataX.

3.       That ETAP pay EasyPower's actual damages incurred, in an amount to be

determined at trial and believed to be in excess of $75,000;

4.       That ETAP account for and disgorge to EasyPower all profits derived by ETAP

from its unlawful acts;

5.       That upon a finding that ETAP's unlawful acts were willful or malicious, that

ETAP pay punitive damages to EasyPower.

6.       That ETAP pay EasyPower's reasonable attorney fees and costs of this action;

and

7.       That EasyPower have any such further relief as the Court may deem just and

proper.

## REQUEST FOR JURY TRIAL

EasyPower requests a jury trial on those claims and issues for which the law provides a

right to a jury trial.

DATED this 20th day of August, 2013.

HARRANG LONG GARY RUDNICK P.C.


By:   s/ Susan D. Marmaduke
       Susan D. Marmaduke, OSB #841458
       susan.marmaduke@harrang.com
       John C. Rake, OSB #105808
       john.rake@harrang.com
       Telephone:    503.242.0000
       Facsimile:    503.241.1458

       Of Attorneys for Plaintiff EasyPower, LLC